IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| KIMBERLY ANDREWS | ) |
| Plaintiff | ) ) ) |
| vs. | ) Docket No. _____ |
| | ) JURY DEMAND |
| OPS CONTRACTING SERVICES, LLC; and ENSAFE, INC. | ) ) ) |
| Defendants | ) |

## COMPLAINT

### Jurisdiction and Venue

1. This Complaint is an action for declaratory, injunctive and other appropriate relief, including compensatory and punitive damages, as permitted by the relevant statute, back pay, costs, and attorney's fees, to redress the deprivation of rights secured to the Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq. (hereinafter Title VII) and the Tennessee Human Rights Act.

2. This Court has jurisdiction over Plaintiff's federal claim under 42 U.S.C. § 2000 e-5(f) (3). This Court has jurisdiction over Plaintiff's state law claim under the doctrine of supplemental jurisdiction.

### Parties

3. Plaintiff Kimberly Andrews, is an African American citizen of the United States and the State of Tennessee. At all times material herein, Plaintiff has been a

1

resident of Nashville, Davidson County, Tennessee and has resided in the judicial district of this Court.

4. Defendant OPS Contracting Services LLC ("OCS"), is a limited liability company with its principal offices in Memphis, Shelby County, Tennessee. Defendant OCS is an employer within the meaning of 42 U.S.C. § 2000e (b). Defendant OCS maintains an office in Nashville, Davidson County, Tennessee, where Plaintiff Andrews was employed.

5. Defendant Ensafe Inc. ("Ensafe") is a Tennessee corporation with its principal offices in Memphis, Shelby County, Tennessee. Defendant Ensafe is an employer within the meaning of 42 U.S.C. § 2000e (b). Defendant Ensafe maintains an office and conducts business in Nashville, Davidson County, Tennessee.

6. Defendant OCS is a single member LLC. Defendant Ensafe is the single member. Among other services, Defendant Ensafe provides human resources services for OCS including, but not limited to, employee recruitment, employee evaluation and employee termination. Ensafe and OCS share senior management. For purposes of this action, Defendant Ensafe is liable for any illegal conduct of Defendant OCS.

## Administrative Procedures and Tolling

7. Within three hundred (300) days of the occurrence of the acts set forth herein, two Charges of retaliation were filed by Plaintiff with the Equal Employment Opportunity Commission.

8. On September 28, 2011, the Equal Employment Opportunity Commission issued Notices of Right to Sue, entitling Plaintiff to institute a civil action in the

2

appropriate court within ninety (90) days of the date of receipt of the Notices. The Notices were received on October 1, 2011.

### Factual Allegations

9. Plaintiff Andrews was employed by OCS in 2004 as an administrative assistant.

10. Plaintiff Andrews received a promotion to the position of DOT Compliance Manager in November 2007. In that position, she was responsible, among other duties, for managing compliance of OCS business activities with Department of Transportation regulations. In her position as DOT Compliance Manager, Plaintiff Andrews exercised appropriate discretion to direct activities within her job responsibilities.

11. Plaintiff Andrews performed her duties in the position of Compliance Manager satisfactorily. She was subject to regular evaluations all of which were no less than satisfactory as a result of which she received regular salary increases and bonuses. Plaintiff Andrews received no disciplinary write ups from the date of her employment until October 2010.

12. In January 2010, Plaintiff Andrews brought a complaint of discrimination concerning the termination of an African-American employee, Mario Rogers, to the attention of Stuart Eiland, Industrial Services Manager, who functioned as the branch manager of the OCS office in Nashville, Tennessee, where Plaintiff Andrews was employed. Plaintiff Andrews was concerned that a similarly situated white employee had not been terminated and that a similarly situated white employee was hired for the

3

same position who wasn't qualified for the position. Stuart Eiland informed Barry Stem, Plaintiff's supervisor, of Plaintiff Andrew's complaint.

13. In April 2010, Plaintiff Andrews was given her 2009 evaluation and received only a two (2) percent pay increase. Plaintiff Andrews alleges that she received a lower pay increase than other OCS employees in retaliation for engaging in protected activity by opposing discriminatory conduct of her employer.

14. In July 2010, Plaintiff Andrews brought another complaint of discriminatory conduct to the attention of her supervisor, Barry Stem. Plaintiff Andrews became aware that another manager employed by OCS was driving an OCS vehicle on a job site to which was attached a license plate that contained a confederate flag. Although Plaintiff Andrews communicated in an email that the flag did not offend her, she stated that she believed the license plate to be offensive to other employees of OCS, including African-American employees, and requested that it be removed. Her supervisor, Barry Stem, acknowledged receipt of the email and responded her complaint would be discussed with management.

15. Plaintiff Andrews later became aware that the OCS manager who placed the confederate flag on his company owned vehicle made statements with racist connotation (the "n" word) when referring to Plaintiff Andrews to her supervisor Barry Stem. The manager was not given any formal discipline for his racist statements.

16. Approximately three weeks later, Plaintiff Andrews had a lunch meeting with Heather Collins, Vice President for Human Resources of Defendant Ensafe and Defendant OCS and Mike Wood, Vice President and Chief Financial Officer of Defendant Ensafe and Defendant OCS. During the lunch meeting the termination of the

employment of Mario Rogers and the confederate license plate were discussed. After the lunch meeting, Plaintiff Andrews learned that the license plate with the Confederate Flag had not been removed. She contacted Health Collins and informed her that the license plate with the Confederate Flag had not been removed.

17. Within a few weeks of bringing complaints about the Confederate license plate to the attention of her supervisor, Barry Stem, and raising the issue of Mario Rogers termination with Heather Collins and Mike Wood, Plaintiff Andrews suffered retaliation from her supervisor by being treated differently with respect to the terms and conditions of her employment than prior to raising these matters, including, but not limited to, the following:

a. Plaintiff Andrews was required to submit additional documentation for an expense report in addition to documentation she submitted previously;

b. Plaintiff Andrews requested reimbursement for expenses she incurred while conducting company business in her personal vehicle. Plaintiff Andrews' request for reimbursement was denied because she could have driven a company vehicle. Plaintiff was previously reimbursed for conducting such business in this manner. Plaintiff Andrews later discovered that another employee of Defendant OCS who had not, on information and belief, engaged in protected activity drove his personal motorcycle from Memphis to Nashville for company business and was reimbursed for his personal travel expenses.

18. Prior to the lunch meeting with Heather Collins and Mike Wood referred to in paragraph 16, Mike Wood falsely accused Plaintiff Andrews of providing information to a former OCS employee involved in litigation with OCS. During this meeting, Mike

5

Wood stated to Plaintiff Andrews that he didn't think she was happy with her job while reminding Plaintiff Andrews that Tennessee was a right to work state. Plaintiff Andrews took Mr. Wood's statements as a threat regarding her future employment with OCS.

19. On August 9, 2010, Plaintiff Andrews filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging acts of discrimination and retaliation, including, but not limited to, the acts alleged in paragraphs 12-17 above.

20. Within a few weeks of filing the Charge of Discrimination, Plaintiff Andrews suffered retaliation from her supervisor by being treated differently with respect to the terms and conditions of her employment than prior to raising the complaints referred to above and filing the Charge of Discrimination alleging retaliation, including, but not limited to the following:

    a. Plaintiff Andrews was required to provide additional notice for a doctor appointment that had not been required of her before;

    b. Plaintiff Andrews submitted a business license application with her signature. Plaintiff Andrews was told to remove her name from the application for signature by Mike Wood. Plaintiff Andrews had previously submitted similar business license applications with her signature without objection;

    c. Plaintiff Andrews was wrongfully accused of circumventing purchasing procedures when submitting an order for office supplies as she had done previously. She was instructed that all future orders for office supplies required approval from her supervisor.

21. In addition, in October 2010, Plaintiff Andrews was issued a written warning by her supervisor. The warning alleged that Plaintiff Andrews had not

6

cancelled a contract as previously directed. Plaintiff Andrews alleges that the written warning was issued without fault on her part. Plaintiff Andrews alleges that the written warning was issued in retaliation for her engaging in protected activity as alleged herein.

22. Because she was issued a written warning, Plaintiff Andrews was not given a regular performance review. As a result of not being given a regular performance review, Plaintiff Andrews did not receive a pay increase as was granted to other employees of Defendant OCS and as she had been awarded in the past.

23. In February, 2011, Plaintiff Andrews was removed from her position as DOT Compliance Manager and replaced by a less qualified employee who has not engaged in protected activity. As a result of being removed from her position, Plaintiff no longer exercises the discretion she previously was able to exercise and is held in lower esteem and regard than she previously enjoyed in the position of DOT Compliance Manager. She was given no explanation for the demotion.

24. Plaintiff Andrews alleges that she was removed from her position as DOT Compliance Manager in retaliation for her engaging in protected activity as alleged herein.

25. The Defendants treated Plaintiff Andrews differently than similarly situated employees of Defendant because she engaged in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Tennessee Human Rights Act.

26. Defendants actions toward Plaintiff Andrews were willful.

27. As a proximate result of Defendants' actions, Plaintiff Andrews has been damaged:

7

(1) by being denied a raise comparable to similarly situated employees who did not engage in protected activity in April 2010;

(2) by being demoted from her position as DOT Compliance Manager to a position of less responsibility;

(3) by being subject to unwarranted discipline as a result of which she was deprived of an annual raise and possible bonus she would have been eligible for had she not engaged in protected activity;

(4) by not being reimbursed for travel expenses provided to a similarly situated employee who had not engaged in protected activity;

(5) by suffering embarrassment, humiliation, anxiety, emotional distress, and damage to her professional and personal reputation.

(6) by incurring counseling and medication expenses.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Issue this Complaint and require the Defendants to answer within the time prescribed by law;

2. Issue a declaratory judgment that Defendants' acts, practices and procedures complained of herein violated Plaintiff's rights as secured under Title VII and the Tennessee Human Rights Act;

3. Award Plaintiff compensatory and punitive damages, back pay, and reimbursement for lost benefits and other appropriate relief to redress the retaliatory practices complained of herein;

8

4. Retain jurisdiction over this action to assure full compliance with the orders of this Court and with applicable law;

5. Grant Plaintiff her costs, attorney's fees and disbursements;

6. Impanel a jury to try this cause; and

7. Grant such additional relief as the Court deems proper and just.

Respectfully submitted,

DOBBINS, VENICK, KUHN & BYASSEE, PLLC

By: _____
Irwin Venick, #4112

210 25th Avenue, North, Suite 1010
Nashville, Tennessee 37203
(615) 321-5659
Irwinv@dvlawfirm.com

9